## THOMAS HARDY *vs.* OZIAS REED.

Where the owner of beds let them for hire, at a stipulated price by the month, payable in advance, and the hirer, before the expiration of the month for which the last payment was made, abandoned the house in which he used the beds, leaving them there and sending word to the owner, that they were ready for him ; it was held, that the owner thereby became entitled to immediate possession of the beds, and might maintain an action of trover therefor, before he received knowledge of the abandonment.

THIS was an action of trover for three feather beds taken by the defendant, a constable of Lowell, by virtue of a writ against one Ness, on the 1st of May, 1847.

At the trial before *Mellen*, J., in the court of common pleas, it was admitted, that the general property in the beds was in the plaintiff; but the defendant contended, that the plaintiff had no right to the immediate possession thereof, at the time of the attachment; inasmuch as they were let to hire by the plaintiff to Ness, in virtue of a written contract, dated the 14th of January, 1847, and signed by Ness, of which the following is a copy:

"Hired and received of Thomas Hardy three feather beds and six pillows, for

the rent and use of which I promise to pay him, or his order, one dollar and twelve cents in advance for every month, and to return the same in good order on demand, and not to sell, remove, or relet said beds, without the consent of said Hardy."

It was in evidence, for the plaintiff, that the above instrument was signed by Ness, on or about the day of its date, and had remained under the control of the plaintiff from that time to the time of the trial; and that the rent of the beds had been paid by Ness, according to the terms of the contract, to the 14th of May, 1847.

It was also in evidence, for the plaintiff, that on the 30th of April, 1847, the day before the attachment by the defendant, Ness left Lowell late at night and went to Salem, where he had ever since remained, leaving the beds in the house at Lowell where he had lived; that on the same day, Ness left directions with one Emerson, to whom he had given possession of the house, to tell the plaintiff that the beds were ready for him; and that this message was communicated by Emerson to the plaintiff, but not until after the attachment had been made by the defendant.

The presiding judge instructed the jury, upon the evidence, that in order to maintain his action, the plaintiff must have a right to the immediate possession of the property, at the time of the conversion; that if the beds at the time of the taking were let for hire to Ness, by the contract above stated, and the contract had not been rescinded, the action could not be maintained; and that if the contract was a subsisting one on the 30th of April, 1847, when Ness left the property for the use of the plaintiff, thereby intending to rescind the contract and abandon his right to the beds, the plaintiff must show, that he had notice of such intention, on the part of Ness, and assented to the rescission, prior to the attachment.

The jury returned a verdict for the defendant, and the plaintiff excepted.

*R. B. Caverly*, for the plaintiff.

*B. F. Butler*, for the defendant.

METCALF, J. It is too clear for doubt, that in order to maintain the action of trover, the plaintiff must have had, at the time of the alleged conversion, the right of possession; and

the only question in this case is, whether the plaintiff had that right at that time. We are all of opinion that he had, and that a new trial must be granted.

The attachment of the beds was the conversion of them, for which this action was brought; and though they had been bailed to Ness, by the plaintiff, for a term which had not expired when they were attached, yet Ness had previously abandoned the house in which he used them, and gone to another county, leaving them in the house, and sending word to the plaintiff that they were ready for him. This, if not a termination of the bailment, was an attempt or offer to terminate it, and gave the plaintiff a right, which he might forthwith exercise, to resume possession of the beds. This right resulted from the facts, and not from the plaintiff's knowledge of those facts at the time of the attachment. If he had taken possession of the beds before they were attached, and before he received Ness's message, neither Ness nor any other person would have had any cause of action or complaint against him. When men do what their actually existing rights authorize them to do, they are legally safe, although they may not know, at the time of acting, what their rights are. So men's rights may be violated whilst they are ignorant of them; as this plaintiff's case shows. But this does not deprive them of a remedy.

*Verdict set aside, and new trial to be had in the court of common pleas.*